UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

ANDREA LYNN HOLLER,

           Plaintiff,

v.

NANCY A. BERRYHILL, Acting
Commissioner of Social Security,[1]

           Defendant.

Case No. C16-1251-RAJ

**ORDER REVERSING AND REMANDING CASE FOR AN AWARD OF BENEFITS**

Andrea Lynn Holler seeks review of the denial of her application for Supplemental Security Income and Disability Insurance Benefits. Ms. Holler contends the ALJ erred by: (1) finding she did not meet Listing 12.05C; (2) improperly evaluating the medical and opinion evidence related to the severity of her mental impairments; (3) failing to properly consider her pelvic/abdominal impairment severe at step two, and failing to properly consider her pain testimony with respect thereto. Dkt. 11 at 1. As relief, Ms. Holler requests that this matter be reversed and remanded for payment of benefits or, alternatively, for further administrative proceedings. As discussed below, the Court **REVERSES** the Commissioner's final decision and

---

[1] Nancy A. Berryhill is now the Acting Commissioner of the Social Security Administration. Pursuant to Federal Rule of Civil Procedure 25(d), Nancy A. Berryhill is substituted for Carolyn W. Colvin as defendant in this suit. The Clerk is directed to update the docket, and all future filings by the parties should reflect this change.

ORDER REVERSING AND REMANDING
CASE FOR AN AWARD OF BENEFITS - 1

**REMANDS** the matter for an award of benefits under sentence four of 42 U.S.C. § 405(g).

## BACKGROUND

In January 2013, Ms. Holler applied for benefits, alleging disability as of March 2010. Tr. 20. She subsequently amended her alleged onset date to January 1, 2005. *Id.* Ms. Holler's applications were denied initially and on reconsideration. *Id.* After the ALJ conducted a hearing on October 9, 2014, the ALJ issued a decision finding Ms. Holler not disabled. Tr. 20-35.

## THE ALJ'S DECISION

Utilizing the five-step disability evaluation process,[2] the ALJ found:

**Step one:** Ms. Holler has not engaged in substantial gainful activity since the amended alleged onset date of January 1, 2005.

**Step two:** Ms. Holler has the following severe impairments: lumbar/thoracic spine strain; bilateral carpal tunnel syndrome; obesity; cognitive disorders (variously diagnosed as amnestic disorder, cognitive disorder, rule out attention deficit disorder (ADD) and intellectual disability); affective disorders (variously diagnosed as mood disorder, dysthymic disorder, postpartum depression, depression, and bipolar disorder); and anxiety disorders (variously diagnosed as anxiety and social phobia with associated panic attacks and at times agoraphobia).

**Step three:** These impairments do not meet or equal the requirements of a listed impairment.[3]

**Residual Functional Capacity:** Ms. Holler can perform light work with additional limitations. She can lift and carry 20 pounds occasionally and 20 pounds frequently. She can sit for about six hours and stand/walk for about six hours in an eight-hour workday with regular breaks. She has unlimited ability to push/pull without those exertional limits. She can frequently climb ramps and stairs, balance, kneel, crouch, and crawl. She can occasionally stoop and climb ladders, ropes, and scaffolds. She can frequently finger. She should avoid concentrated exposure to extreme cold, vibration, and hazards. She can understand, remember, and carry out simple, routine, and repetitive tasks consistent with jobs with an SVP of 1-2. She can work in small groups of coworkers. She can have incidental brief contact with the general public. She can have occasional contact with supervisors. Job requirements and expectations should be clear and involve a routine o[r] predictable work environment and tasks with few changes in the routine.

---

[2] 20 C.F.R. §§ 404.1520, 416.920.
[3] 20 C.F.R. Part 404, Subpart P. Appendix 1.

1  **Step four:** Ms. Holler cannot perform past relevant work.

2  **Step five:** As there are jobs that exist in significant numbers in the national economy that Ms. Holler can perform, she is not disabled.

Tr. 20-35. The Appeals Council denied Ms. Holler's request for review making the ALJ's decision the Commissioner's final decision. Tr. 7-10.[4]

## DISCUSSION

Ms. Holler argues the ALJ erred in failing to find she met or equaled Listing 12.05C, Intellectual Disability, and was therefore disabled. Dkt. 11 at 3-11. The Court agrees.

At step three of the disability evaluation process, the ALJ must evaluate the claimant's impairments to see if they meet or medically equal any of the impairments set forth in the Listings. *See* 20 C.F.R § 404.1520(d); *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999); 20 C.F.R. Pt. 404, Subpt. P. App.1. If any of the claimant's impairments meet or medically equal a listed impairment, he or she is found disabled without further inquiry. *Id.* The burden of proof is on the claimant to establish he or she meets or equals any of the impairments in the Listings. *See Tackett*, 180 F.3d at 1098. Each listing describes the "symptoms, signs, and laboratory findings" the claimant must establish in order for his impairments to meet the listing. *Tackett*, 180 F.3d at 1099.

The introductory paragraph of Listing 12.05 provides that "[i]ntellectual disability refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22." *See* 20 C.F.R. Pt. 404 Subpt. P, App. 1, § 12.05C.[5] The

---

[4] The rest of the procedural history is not relevant to the outcome of the case and is thus omitted.

[5] A revised Listing of Impairments went into effect August 22, 2017. However, because the ALJ's decision is the final decision of the Commissioner, the Court applies the version of Listing 12.05 in effect at the time of the ALJ's decision. *See* Revised Medical Criteria for Evaluating Mental Disorders, 81 Fed.

listing further states that the "required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied." *Id.* Section C of the listing requires "[a] valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function[.]" *Id.* Thus, in order to meet Listing 12.05C, a claimant must satisfy three requirements: (1) "significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22"; (2) "a valid verbal, performance, or full scale IQ of 60 through 70"; and (3) "a physical or other mental impairment imposing an additional and significant work-related limitation." *Id.*; *see Kennedy v. Colvin*, 738 F.3d 1172, 1176 (9th Cir. 2013).

Neither party disputes that Ms. Holler meets the second and third requirements of the listing.[6] Dkt. 19 at 3. However, the ALJ found that Ms. Holler did not meet the first requirement (set forth in the introductory paragraph of the listing) for several reasons. Tr. 25-26. Specifically, the ALJ found Ms. Holler's higher 1989 IQ scores contradicted the manifestation of low intellectual and adaptive functioning during the early period of her life. *Id.* Intellectual testing completed in 1989 (when Ms. Holler was 11) did show she had borderline to low average intellectual functioning with a Verbal IQ score of 88, a Performance IQ of 77, and a Full Scale

---

Reg. 66138, 2016 WL 5341732, *66138 & n.1 (Sept. 26, 2016) ("We expect that Federal courts will review our final decisions using the rules that were in effect at the time we issued the decisions."); *see Lowry v. Astrue*, 474 Fed. Appx. 801, 805 n.2 (2d Cir. 2012) (applying version of regulation in effect at time of ALJ's decision despite subsequent amendment)

[6] The ALJ acknowledged that Kerry T. Bartlett, Ph.D., assessed Ms. Holler with a full scale IQ score of 65 in 2014. The ALJ also found Ms. Holler had other severe impairments in addition to her cognitive or intellectual impairment. Tr. 23. Specifically, the ALJ found additional severe impairments of lumbar thoraci spine strain, bilateral carpal tunnel syndrome, obesity, affective disorders, and anxiety disorders. *Id.*; *see Pedro v. Astrue*, 849 F.Supp.2d 1006, 1014 (D. Or. 2011) (finding that an additional impairment listed at step two satisfies the third requirement of Listing 12.05C).

ORDER REVERSING AND REMANDING
CASE FOR AN AWARD OF BENEFITS - 4

IQ score of 81 (above Listing level). However, when there are multiple IQ scores, the Commissioner is required to use the lowest valid score for purposes of determining whether a claimant satisfies the requirements of Listing 12.05C. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00D(6)(c). Courts in the Ninth Circuit have interpreted this to mean the lowest score across multiple IQ tests. *See, e.g., Fanning v. Bowen*, 827 F.2d 631, 633 (9th Cir.1987) (providing that where a claimant took IQ tests in both 1982 and 1983, higher scores obtained in 1983 did not render lower scores obtained in 1982 invalid for purposes of listing 12.05(C)); *Moore v. Colvin*, 2017 WL 525120, at *4 (D. Or. Jan. 10, 2017); *Cauffman v. Astrue*, 2010 WL 5464815, at *6 (W.D. Wash. Nov. 12, 2010). Here, Ms. Holler's 2014 full scale IQ score of 65 is the lowest IQ score in the record and the ALJ accepted it as valid and sufficient to meet the Listing requirement of an IQ score between 60 and 70. Tr. 25.

Furthermore, the regulations themselves state that the results of IQ tests "tend to stabilize by the age of 16," and IQ scores above 40 obtained between the ages of 7 and 16 are only considered current or valid for four years. 20 C.F.R. Pt. 404, Subpt. P. App.1 112.00(D)(10). Thus, the mere fact that Ms. Holler's 1989 IQ score was above the Listing level does not invalidate or substantially undermine her 2014 IQ score, which was more recent and obtained after she reached the age of 16 when the regulations acknowledge IQ scores "stabilize." Moreover, "the requirement of early onset and the reference to the claimant's 'developmental period' [in the introductory paragraph of Listing 12.05] seem intended to limit coverage to an innate condition, *Brown v. Secretary of Health & Human Services*, 948 F.2d 268, 271 (6th Cir. 1991), rather than a condition resulting from a disease or accident in adulthood." *Novy v. Astrue*, 497 F.3d 708, 709 (7th Cir. 2007). Here, there is no evidence of an intervening accident such as head trauma or a disease process in adulthood that would have significantly affected Ms.

Holler's intellectual capacity.[7]

The ALJ also found Ms. Holler did not meet the first prong of the Listing because she graduated from high school, there was no indication she participated in special education, she worked at substantial gainful levels, earned online certificates in paralegal studies in 2006 and medical office assistant program in 2007, and cared for her father when he was ill as well as her own children. Tr. 26. With respect to the ALJ's discussion of Ms. Holler's ability to function as an adult, as the Court noted in *Evans v. Colvin*, No. 13-5436, ECF No. 27, page 11 (W.D. Wash. Jan. 30, 2014) the plain language of Listing 12.05 "focuses on whether deficits in adaptive functioning existed during the developmental period, without reference to current functioning." Other courts in the Ninth Circuit have tended to follow this interpretation of Listing 12.05C. *See Pedro*, 849 F.Supp.2d at 1014 (finding the ALJ erred in concluding that because claimant can now drive, live independently, manage her own hygiene, and care for her children, she is not disabled because "the record contains evidence demonstrating deficits in adaptive functioning prior to age 22" and "[t]he listing does not require more."); *Abel v. Colvin*, No. 12-cv-06025, 2014 WL 868821, at *4 (W.D. Wash. 2014) ("Although plaintiff later was able to work at a variety of low-skilled jobs, the introductory paragraph of Listing 12.05 does not consider plaintiff's subsequent employment, but rather her level of functioning during her early years— before age 22."); *Thresher v. Astrue*, 283 Fed.Appx. 473, 474 (9th Cir. 2008) ("the evidence will

---

[7] The record does indicate that Ms. Holler developed depression and anxiety after the birth of her child in 2010. Tr. 26. However, neither Dr. Bartlett nor the ALJ attribute Ms. Holler's full scale IQ score of 65 in 2014 to her anxiety or depression. Rather, Dr. Bartlett considered these factors in performing his IQ test and evaluation in 2014 and indicated that he believed Ms. Holler's difficulties with cognitive functioning are "largely developmentally based or possibly related to her mother's reported pneumonia during the last trimester of her pregnancy with her and associated use of antibiotics." Tr. 632. Moreover, in evaluating Dr. Bartlett's opinion, the ALJ noted that Ms. Holler's mental health symptoms had been adequately controlled through therapy and medication. Tr. 31.

ORDER REVERSING AND REMANDING
CASE FOR AN AWARD OF BENEFITS - 6

support a determination that … [the claimant] … does come within … [Listing 12.05C] … because two of her IQ scores were in the 60 through 70 range, that *mental condition began before she was 22 years of age*, and she does have an additional physical impairment." (emphasis added)); *Campbell v. Astrue*, No. 09-cv-465, 2011 WL 444783, at *17 (E.D. Cal. Feb. 8, 2011) (concluding that "deficits in adaptive functioning" refer to deficits occurring during the developmental period such as "attendance in special education classes, dropping out of high school prior to graduation, difficulties in reading, writing or math, and low skilled work history").

Moreover, because the severity of intellectual disability is established by subparagraphs A through D, the Court "does not assess severity in considering whether a claimant meets the requirements of listing 12.05's introductory paragraph." *Jones v. Colvin*, 149 F.Supp.3d 1251, 1260 (D. Or. Feb. 29, 2016). The introductory paragraph only requires evidence that "supports onset of the impairment before age 22." *See* 20 C.F.R. Pt. 404 Subpt. P, App. 1, § 12.05. Here, there is sufficient evidence of adaptive deficits during the developmental period to satisfy Listing 12.05C. The Diagnostic & Statistical Manual of Mental Disorders provides that:

> Deficits in adaptive functioning … refers to how well a person meets community standards of personal independence and social responsibility, in comparison to others of similar age and sociocultural background. Adaptive functioning involves adaptive reasoning in three domains: conceptual, social, and practical. The conceptual (academic) domain involves competence in memory, language, reading, writing, math reasoning, acquisition of practical knowledge, problem solving, and judgment in novel situations, among others. The social domain involves awareness of others' thoughts, feelings, and experiences; empathy; interpersonal communication skills; friendship abilities; and social judgment, among others. The practical domain involves learning and self-management across life settings, including personal care, job responsibilities, money management, recreation, self-management of behavior, and school and work task organization, among others.

*American Psychiatric Ass'n Diagnostic & Statistical Manual of Mental Disorders* 37 (5th

ed.2013) (*DSM–V* )). To demonstrate deficits in adaptive functioning during the developmental period a claimant may rely on circumstantial evidence such as "attendance in special education classes, dropping out of high school prior to graduation, difficulties in reading, writing or math, and low skilled work history." *Campbell*, 2011 WL 444783 at *17; *accord Able*, 2014 WL 868821 at *3-6; *accord Maresh v. Barnhart*, 438 F.3d 897, 900 (8th Cir. 2006) (onset before age 22 demonstrated based on record that claimant was in special education classes, dropped out of school, had difficulty reading, writing and with math, and exhibited deficits in adaptive functioning at a young age).

Here, although Ms. Holler graduated high school and was not in special education classes, there is other evidence that she exhibited deficits in adaptive functioning during the developmental period. Specifically, there is evidence Ms. Holler was held back a grade, that on testing she showed significant difficulties in the areas of memory and auditory processing, that she was noted to be a "slow learner", and test results indicated she was having significant difficulties in a variety of school areas. Tr. 187-89. Moreover, Ms. Holler was seen by a psychiatrist at age 11 because she was missing school due to psychosomatic symptoms the psychiatrist attributed to anxiety over her academic difficulties. Tr. 189. Ms. Holler also testified that she had always struggled with memory issues, had difficulty with math, learning instructions and remembering and retaining new information, and although she was not in special education classes she was given extra time on tests. Tr. 1066, 1069, 1085, 630.

Even if it were appropriate to consider Ms. Holler's current functioning, her ability to work at primarily low skilled jobs, complete two online certificates, perform some basic household activities, and care for her children and father does not undermine the evidence of deficits in her adaptive functioning prior to age 22. *See*, *e.g., Pedro*, 849 F.Supp.2d 1006

(history of low skilled work including work in a laundry, cleaning and bagging groceries and daily activities such as reading, driving and cleaning are not necessarily inconsistent with low level of intellectual functioning); *accord Abel*, 2014 WL 868821 at *3-6 (history of unskilled jobs not incompatible with low level of intellectual functioning and requirements of 12.05C). While the introductory paragraph of Listing 12.05 requires the existence of deficits in adaptive functioning prior to age 22, it does not require a showing that those adaptive deficits are of disabling severity on their own. *See Pedro*, 849 F.Supp.2d 1006 ("a claimant can satisfy Listing 12.05C without 'having to demonstrate a disabling or even severe, level of mental functioning impairment.'" (citing *Gomez v. Astrue*, 695 F.Supp.2d 1049, 1057 (C.D. Cal. Feb. 10, 2010)); *Evans*, No. 13-5436 (W.D. Wash. Jan. 30, 2014). And "even though some courts examine current functioning deficits, they have not [generally] held that any particular indicia of severity must be demonstrated."[8] *Abel*, 2014 WL 868821 at *3-6; *and see, e.g., McGrew v. Colvin*, 13-cv-01909, 2015 WL 1393291, *7 (D. Or. Mar. 25, 2015) (finding current adaptive deficits relevant but that "the introductory paragraph of Listing 12.05 requires evidence that deficits in adaptive functioning exist, not evidence that a claimant has no adaptive functioning skills" and "having some work history and possessing average living skills and the ability to drive does not indicate that a claimant does not have deficits in adaptive functioning").

---

[8] In fact, Listing 12.05 imposes no specific severity requirement with respect to the criteria of "deficits in adaptive functioning initially manifested during the developmental period." *See* 20 C.F.R. Pt. 404 Subpt. P, App. 1, § 12.05C. Rather, the listing indicates that "the required level of severity of the disorder is met when the requirements in A, B, C, or D are satisfied." *Id.* With respect to Listing 12.05C this means the "required level of severity" is met when the claimant satisfies the requirements of "a valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation." *Id.*; *see McGrew*, 2015 WL 1393291, *7 (noting that the "existence of deficits in adaptive functioning is considered when analyzing the introductory paragraph of Listing 12.05 and the severity of those deficits is considered in subparts A through D."). Here, there is no dispute that Ms. Holler met these latter requirements.

ORDER REVERSING AND REMANDING
CASE FOR AN AWARD OF BENEFITS - 9

Thus, even if a claimant's current functioning were relevant, the evidence the ALJ cites does not undermine the evidence of adaptive deficits prior to age 22, nor does it establish that Ms. Holler has no current deficits in adaptive functioning. Ms. Holler testified that she had been forced to leave a nursing assistant training program because she was unable to understand and remember the information, that she had to leave a job at JC Penny because she was unable to work a cash register and count back change, and she had to leave a job as a receptionist because she was unable to remember how to use the computer or work the phones. Tr. 1084-1086. Moreover, in the RFC, the ALJ limited Ms. Holler to: simple, routine, and repetitive tasks consistent with jobs with an SVP of 1-2; jobs with clear requirements and expectations and involving a routine or predictable work environment and tasks with few changes in the routine; and to working in small groups of coworkers, incidental brief contact with the general public and occasional contact with supervisors. Tr. 26; *see McGrew*, 2015 WL 1393291, at *7 (RFC that precluded claimant from working with others and having contact with the public evidenced deficits in adaptive functioning).

Finally, the ALJ also found Ms. Holler did not meet the first prong of the Listing because the record does not document cognitive complaints until after Ms. Holler engaged in mental health treatment following the birth of her daughter in 2010. Tr. 26. However, as noted above, Ms. Holler did manifest adaptive deficits prior to the age of 22 and the fact that the medical records only document her cognitive complaints after she engaged in mental health treatment for her post-partum depression and anxiety does not undermine the evidence that she exhibited such deficits prior to age 22. Furthermore, it is not necessarily surprising that someone with a longstanding intellectual impairment would not seek treatment as she may not have seen such impairment as treatable. Thus, the fact that Ms. Holler complained of cognitive difficulties to

her doctors in the context of treatment for her mental health symptoms does not negate or substantially undermine the evidence of adaptive deficits and intellectual difficulties before that time.

Under the circumstances, the Court finds there is sufficient evidence to establish that Ms. Holler had deficits in adaptive functioning initially manifested during the developmental period, and, therefore, that she satisfied the requirements of Listing 12.05C. Because the Court finds Ms. Holler meets Listing 12.05C, it need not address her other assignments of error. No further proceedings would be useful because the record is fully developed and establishes Ms. Holler should have been found disabled at step three. *See Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000) (holding that "the decision of whether to remand for further proceedings turns upon the likely utility of such proceedings."). Accordingly, remand for an award of benefits is appropriate in this case. *See Benecke v. Barnhart*, 379 F.3d 587, 593 (9th Cir. 2004)

## CONCLUSION

For the foregoing reasons, the Commissioner's final decision is **REVERSED** and this case is **REMANDED** under sentence four of 42 U.S.C. § 405(g) for an award of benefits.

DATED this 12th day of October, 2017.

*Richard A. Jones*

The Honorable Richard A. Jones
United States District Judge

ORDER REVERSING AND REMANDING
CASE FOR AN AWARD OF BENEFITS - 12